# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**FILED**
**June 11, 2014**
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

**THEODORE B. STUART,**
**Claimant Below, Petitioner**

**vs.)    No. 13-0153**  (BOR Appeal Nos. 2046278 & 2046279)
(Claim No. 2009090183)

**WEST VIRGINIA DIVISION OF JUVENILE SERVICES,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Theodore B. Stuart, by George Zivkovich, his attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. The West Virginia Division of Juvenile Services, by H. Dill Battle III, its attorney, filed a timely response.

This appeal arises from the Board of Review's Final Order dated January 25, 2013, in which the Board affirmed two August 18, 2011, Orders of the Workers' Compensation Office of Judges. In one Order, the Office of Judges affirmed the claims administrator's February 26, 2010; March 22, 2010; and May 6, 2010, decisions denying a reopening request for temporary total disability benefits, denying authorization for a lumbar myelogram, and denying authorization of additional physical medicine therapy, respectively. In its second Order, the Office of Judges affirmed the claims administrator's October 16, 2009, decision denying a request to add cervical and lumbar radiculopathy as compensable components of the claim. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Stuart was injured on April 29, 2009, while participating in a form of pressure point control training. On May 2, 2009, the claims administrator held the claim compensable for lumbar strain, lumbosacral strain, and sacroiliac strain. Mr. Stuart has a well-documented history

1

of back problems predating the April 29, 2009, compensable injury. On February 1, 2007, a lumbar spine MRI revealed mild to moderate degenerative spondylosis with a small annular fibrosis tear. A second lumbar spine MRI performed on September 29, 2007, revealed degenerative disc disease with a mild bulge and annular tear at L5-S1 without a disc herniation or spinal stenosis, along with mild facet arthritic changes at the L5-S1 level. A third lumbar spine MRI was performed following the April 29, 2009, injury on May 28, 2009. It revealed facet arthritic changes at L4-5 and degenerative disc disease with a mild disc bulge and mild facet arthritic changes at L5-S1, with no evidence of a disc herniation or spinal stenosis.

On June 29, 2009, neurologist Robert Crow, M.D., evaluated Mr. Stuart. He diagnosed Mr. Stuart with chronic low back pain with spondylosis. Dr. Crow opined that the lumbar spine MRI performed on May 28, 2009, did not reveal any acute changes, but showed focal degenerative changes at L5-S1. On July 7, 2009, Mr. Stuart began treating with Michael Shramowiat, M.D. In his initial evaluation, Dr. Shramowiat noted that Mr. Stuart reported experiencing a dull ache in his neck and lower back with intermittent shooting pain into his extremities. On July 10, 2009, Dr. Shramowiat filed a diagnosis update requesting that cervical and lumbar radiculopathy be added as compensable components of the claim. On July 28, 2009, he requested authorization of physical medicine therapy for the purpose of strengthening and stabilizing Mr. Stuart's lumbar spine.

On August 5, 2009, ChuanFang Jin, M.D., performed a records review and opined that cervical and lumbar radiculopathy should not be added as compensable components of the claim arising from the April 29, 2009, injury. She opined that there is insufficient medical evidence of record to support a finding of causality between the April 29, 2009, injury and a diagnosis of cervical and lumbar radiculopathy. She concluded that there is no evidence of record indicating that Mr. Stuart sustained a neck injury on April 29, 2009, and further concluded that the May 28, 2009, lumbar spine MRI findings are consistent with pre-existing degenerative disease as opposed to an isolated injury.

On August 18, 2009, Sushil Sethi, M.D., performed an independent medical evaluation and concluded that Mr. Stuart had reached maximum medical improvement with regard to the injuries sustained on April 29, 2009. Also on August 18, 2009, the claims administrator denied Dr. Shramowiat's request to add cervical and lumbar radiculopathy as compensable components of the claim. On October 16, 2009, the claims administrator affirmed its August 18, 2009, denial of Dr. Shramowiat's request to add cervical and lumbar radiculopathy as compensable components of the claim.

On January 21, 2010, James Dauphin, M.D., performed a records review and recommended denying Dr. Shramowiat's request for authorization of physical medicine therapy. He noted the presence of a pre-existing annular tear in the lumbar spine. Dr. Dauphin opined that the evidence of record indicates that the requested physical medicine therapy is aimed at treating naturally occurring degenerative changes rather than symptoms resulting from the April 29, 2009, injury. On January 25, 2010, the claims administrator denied Dr. Shramowiat's request for authorization of physical medicine therapy.

On February 15, 2010, Dr. Shramowiat completed an application to reopen the claim arising from the April 29, 2009, injury. He indicated that Mr. Stuart was temporarily and totally disabled from January 7, 2010, through March 22, 2010, and requested authorization for a lumbar myelogram. On February 26, 2010, the claims administrator denied Dr. Shramowiat's request to reopen the claim arising from the April 29, 2009, injury for consideration of temporary total disability benefits.

Randall Short, D.O., performed a records review on March 18, 2010, and recommended denying Dr. Shramowiat's request for authorization of a lumbar myelogram based on a finding that the request was made in response to symptoms arising from pre-existing degenerative changes that are unrelated to the April 29, 2009, injury. Dr. Short noted that Mr. Stuart's initial work-up following the April 29, 2009, injury revealed the presence of significant degenerative changes in the lumbar spine, and further noted that a neurosurgical evaluation was not recommended in the instant claim. On March 19, 2010, the claims administrator denied Dr. Shramowiat's request for authorization of a lumbar myelogram.

On March 22, 2010, the claims administrator affirmed its January 25, 2010, denial of Dr. Shramowiat's request for authorization of physical medicine therapy. On April 9, 2010, Dr. Shramowiat completed a second reopening application. He indicated that Mr. Stuart was temporarily totally disabled from January 7, 2010, through May 1, 2010, and again requested authorization for a lumbar myelogram. On May 6, 2010, the claims administrator affirmed its March 19, 2010, denial of Dr. Shramowiat's request for authorization of a lumbar myelogram.

Mr. Stuart underwent a cervical spine MRI on June 29, 2010, which revealed a C3-4 disc herniation, a C5-6 disc extrusion, and a mild to moderate degree of bilateral foraminal narrowing at C4-5. Marsha Lee Bailey, M.D., performed an independent medical evaluation on November 5, 2010. She diagnosed Mr. Stuart with chronic cervical, thoracic, and lumbar pain without evidence of true radiculopathy in any of the four extremities. She took note of the dates of the reopening applications filed by Dr. Shramowiat, and opined that Mr. Stuart had reached maximum medical improvement before the first application was filed. She found that Mr. Stuart had experienced spinal pain dating at least to 2004, and opined that his ongoing complaints are solely the result of degenerative disc and joint disease of the cervical, thoracic, and lumbar spine. She concluded that no further treatment in relation to the April 29, 2009, injury is indicated because any ongoing treatment would be aimed at treating degenerative disease unrelated to the compensable injuries. Dr. Bailey stated that it is her strong opinion that there is no medical evidence favoring the authorization of the lumbar myelogram, and pointed out that Mr. Stuart has already undergone three lumbar spine MRIs which revealed only degenerative disease. She further stated that the requested physical medicine therapy is not indicated in response to the compensable injury, and stated that as of the date of Dr. Shramowiat's authorization request, no further therapy could have realistically been expected to improve Mr. Stuart's long-standing symptoms. Finally, after reviewing the cervical and lumbar spine MRIs of record, Dr. Bailey concluded that there is no evidence justifying a diagnosis of cervical or lumbar radiculopathy or radiculitis, and questioned the occurrence of a cervical spine injury on April 29, 2009, based on Mr. Stuart's medical history.

On February 9, 2011, Dr. Shramowiat testified in a deposition. He testified that he requested the addition of lumbar and cervical radiculopathy as compensable components of the claim because Mr. Stuart was having radicular symptoms caused by a probable disc herniation in the cervical spine, which was confirmed via MRI. He further testified that he is unsure whether Mr. Stuart will continue to benefit from the requested physical medicine therapy; he also stated that the requested lumbar myelogram is no longer needed, and indicated that a lumbar myelogram was previously performed and the results were normal.

The Office of Judges affirmed the claims administrator's February 26, 2010; March 22, 2010; and May 6, 2010, decisions in an Order dated August 18, 2011, and held that authorization for a lumbar myelogram, physical medicine therapy, and a reopening of the claim for temporary total disability benefits were properly denied. In a separate Order also dated August 18, 2011, the Office of Judges affirmed the claims administrator's October 16, 2009, decision and held that the request to add cervical and lumbar radiculopathy as compensable components of the claim was properly denied. Mr. Stuart disputes these findings and asserts that the evidence of record demonstrates that he sustained cervical and lumbar spine injuries on April 29, 2009, in the course of his employment and is therefore entitled to the addition of the requested additional compensable components, the requested medical benefits, and a reopening of the claim for consideration and payment of temporary total disability benefits.

In making its determination, the Office of Judges relied on the opinions of Drs. Short, Dauphin, and Bailey, who collectively opined that physical medicine therapy, a lumbar myelogram, and the addition of the diagnoses of cervical and lumbar radiculopathy are not warranted in the claim arising from the April 29, 2009, injury. In particular, Dr. Bailey provided a very detailed explanation describing why the requested benefits are not appropriate for the claim arising from the April 29, 2009, injury. Moreover, the Office of Judges noted that Dr. Shramowiat is the sole physician of record who attributed the diagnoses of cervical and lumbar radiculopathy to the April 29, 2009, injury. Additionally, the Office of Judges found that based upon the evidence of record, Dr. Shramowiat's diagnoses of cervical and lumbar radiculopathy are questionable. The Office of Judges therefore found that the denial of authorization for physical medicine therapy, a lumbar myelogram, and the addition of the diagnoses of cervical and lumbar radiculopathy are appropriate based on the evidence of record.

When evaluating Mr. Stuart's request to reopen the claim for temporary total disability benefits, the Office of Judges looked to West Virginia Code §§ 23-5-2 (2005) and 23-5-3 (2009), which provide that in order to obtain a reopening of a claim, the claimant must show in a written application that he has suffered a progression or aggravation of a compensable condition, or show some other fact or facts that were not previously considered and would entitle the claimant to greater benefits than he has already received. The Office of Judges found that Mr. Stuart has failed to demonstrate that he sustained a progression or aggravation of his compensable injury, and has also failed to present facts that were not previously considered sufficient to warrant a reopening of the claim. Moreover, West Virginia Code § 23-4-7a (2005) states in part that temporary total disability benefits are not payable after a claimant reaches maximum medical improvement. As stated above, Dr. Sethi found that Mr. Stuart had reached maximum medical improvement as of August 18, 2009, which was well before the requested onset date for

4

temporary total disability benefits, and Dr. Bailey opined that Mr. Stuart had reached maximum medical improvement prior to February 15, 2010, which is approximately one month after the requested onset date. The Board of Review affirmed the reasoning and conclusions contained in the two August 18, 2011, Orders of the Office of Judges on January 25, 2013. We agree with the reasoning of the Office of Judges and the conclusions of the Board of Review.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED:  June 11, 2014**

**CONCURRED IN BY:**
Chief Justice Robin J. Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II